UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KULDEEP KULDEEP,<br><br>                           Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California, et al.,<br><br>                         Respondents. | Case No.: 25cv3829-LL-AHG<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Kuldeep Kuldeep's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition.

I.      BACKGROUND

Petitioner is a citizen of India who entered the United States in December 2022 seeking asylum to escape political persecution and torture. Pet. ¶¶ 8–10. During his initial detention, he was found to have a credible fear of persecution. *Id.* ¶ 11. Petitioner was subsequently released by DHS on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) in February 2023, after a determination that he was neither a flight risk

nor a danger to the community. *Id.* ¶ 12. Upon his release, he was issued a Notice to Appear and a Form I-286, Notice of Custody Determination, which states in part, "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be: . . . Released . . . under other conditions. *Id.* ¶¶ 12–13.

Petitioner complied with his conditions of release, attended all his court hearings, timely filed his application for asylum, and obeyed all laws of the United States. *Id.* ¶ 15. On July 26, 2025, Petitioner was detained at his ICE check-in appointment without any notice or opportunity to be heard, or any showing of changed circumstances. *Id.* ¶ 16. He is currently at Otay Mesa Detention Center. *Id.*

On December 30, 2025, he filed the instant Petition, alleging that his re-detention without notice and a hearing, and his prolonged detention, violate the Fifth Amendment's Due Process Clause and the Administrative Procedure Act, and that he is wrongfully detained under 8 U.S.C. § 1225(b)(2). *Id.* ¶¶ 56–17. He seeks a writ of habeas corpus directing Respondents to, *inter alia*, release him from custody under the same conditions as his initial release or alternatively, a bond hearing. *Id.* at 41–42.

On January 8, 2026, Respondents filed a Response acknowledging that (1) DHS instituted a notice on July 8, 2025 requiring that "anyone arrested in the United States and charged with being inadmissible to be considered an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A), subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and not subject to detention under 8 U.S.C. § 1226(a)"; (2) in the class action *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the district court declared the DHS notice unlawful under the Administrative Procedures Act; (3) a final judgment was entered in *Maldonado Bautista* on December 18, 2025; and (4) therefore, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to an order from this Court directing a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No. 4; *see also Maldonado Bautista v. Noem*,

2

No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) (entering final judgment for members of the Bond Eligible Class).

On January 8, 2026, Petitioner filed a Traverse arguing that he is not a member of the Bond Eligible Class because he does not fit its definition. ECF No. 5 at 2. Petitioner also contends that a bond hearing is not an adequate remedy for re-detention without a pre-deprivation hearing in violation of his due process rights, and the proper relief is his immediate release. *Id.* at 2–3.

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Petitioner argues that the summary revocation of his parole without notice or a hearing, and his prolonged detention, violate the Due Process Clause and the Administrative Procedure Act, and that he is wrongfully detained under 8 U.S.C. § 1225(b)(2) in violation of the Immigration and Nationality Act. Pet. ¶¶ 56–107. Respondents do not directly address Petitioner's claims, instead conceding that in light of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. ECF No. 4.

### A.   Detention Statute

The Court agrees with Petitioner that he does not fit the definition of the Bond Eligible Class of *Maldonado Bautista* because those class members are noncitizens who arrived without inspection but were never previously detained. ECF No. 5 at 2 & n.1.

3

|   |   |
|---|---|
| 1 | The Court also agrees with Petitioner that he is wrongfully detained under 8 U.S.C. § 1225(b). As a noncitizen who, at the time of his detention, had been present in the United States for almost three years on conditional parole while he sought asylum, Petitioner was and is subject to 8 U.S.C. § 1226(a), which states that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, 8 U.S.C § 1225(b) applies to noncitizens arriving at the border or who very recently entered the United States. *See Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *4–7 (S.D. Cal. Nov. 4, 2025). As the Supreme Court explained, the government may "detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," while § 1226(a) allows the government to "detain certain aliens *already in the county* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). |

### B. Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[]

to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Since the initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir.

2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his parole without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is

///

///

///

unlawful.[1] *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori*, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** Petitioner's Petition.[2]

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and **ORDERS** as follows:

1.   Respondents shall immediately release Petitioner from custody subject only to the conditions of his preexisting parole.

2.   Prior to any re-detention of Petitioner, he is entitled to notice of the reasons for revocation of his parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall

---

[1] Because the Petition can be resolved on these due process grounds, the Court declines to reach Petitioner's claims of prolonged detention, INA violation, or APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *3, 13 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL 2770629, at *4 (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

[2] In his prayer for relief, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES without prejudice**. Pet. at 42.

bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

3. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: January 27, 2026

Honorable Linda Lopez
United States District Judge